UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-404-MOC-DSC

| | |
|---|---|
| **MARGARET L. WHITE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **BUCKEYE FIRE EQUIPMENT COMPANY,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment. Having considered this motion and reviewed the pleadings, the court enters the following Order.

**I.**     **Background**

Defendant develops and manufactures fire protection products. Plaintiff is a former employee of defendant's. Plaintiff obtained her welding certification while in prison, but does not have any certifications allowing her to weld on tanks graded by the American Society of Mechanical Engineers ("ASME"). In July 2014, plaintiff began working for defendant as a welder through a temporary agency. On October 13, 2014, defendant hired plaintiff as an at-will welder in its wheeled engine department, with a pay rate of $12.00 per hour.

On February 3, 2015, defendant hired Carolyn Lanier as its Human Resources Manager. Shortly thereafter, plaintiff asked Lanier for a raise, expressing displeasure and a belief that others were receiving raises but she was not. Plaintiff thought that employees received a raise after 90 days of employment, but Lanier told plaintiff that defendant only issued pay increases based on merit. However, after Lanier heard from more employees expecting raises after 90

days, she discussed providing merit raises with Plant Manager Gerald Culp. As a result, defendant issued merit raises. On June 15, 2015, plaintiff's hourly rate was increased from $12.00 to $13.00.

On September 16, 2015, plaintiff was using a disc grinder to grind a piece of rod stock and the machine caught the gloves she was wearing, pulling her hand into the machine and partially amputating her finger. Lanier proceeded to initiate a workers' compensation claim for plaintiff. Plaintiff was out of work due to her finger injury until October 12, 2015, when she returned with lifting restrictions. Lanier told Culp about the restrictions and asked if any accommodations or open positions were available, since plaintiff's welding position required regular and repeated lifting of at least 25 pounds. Defendant lacked the staff to provide plaintiff with the frequent lifting assistance required for her to remain in her welding position, so Culp placed plaintiff in the $CO_2$ department to accommodate her, since that role only required lifting up to ten pounds. Plaintiff continued to be paid $13.00 per hour. On December 17, 2015, plaintiff's lifting restriction remained at ten pounds, so she remained in the $CO_2$ department.

Plaintiff's first year of employment with defendant was rife with disciplinary problems, with six disciplinary actions ranging from written verbal warnings to a 3-day suspension. Much of plaintiff's discipline resulted from her poor cooperation, the creation of a hostile work environment, and arguments with co-workers. Plaintiff's disciplinary problems continued into the $CO_2$ department. On November 10, 2015, plaintiff received a written warning following a verbal altercation with co-worker Danny Weaver. The same day, plaintiff received a second written warning after she left defendant's facility without clocking out.

During the investigation into the Weaver incident, plaintiff reported to Lanier that she felt she had been targeted by other welders because she was the only female welder in the wheeled engine department. Lanier promptly investigated plaintiff's report. Although Lanier could not substantiate plaintiff's claim, Lanier discovered that much of plaintiff's prior discipline resulted from reports made by employees who had since been terminated, and Lanier decided to remove the prior discipline in the wheeled engine department from plaintiff's personnel file. The discipline from the $CO_2$ department, for the Weaver incident and failing to clock out, remained.

On January 26, 2016, plaintiff slipped and fell on ice in the parking lot. Plaintiff was written out of work until January 29, 2016. Plaintiff was already scheduled to undergo a second surgery on her injured finger on February 2, 2016. Defendant gave plaintiff time off between her January 29 release and the February 2 surgery.

On February 18, 2016, plaintiff was released to return to work with a lifting restriction of no more than 5 pounds. Upon receiving the restriction, Lanier immediately asked Culp whether any accommodations or open positions were available. Culp informed Lanier that all positions require employees to lift at least ten pounds, and that defendant lacked sufficient personnel to provide White with lifting assistance. Lanier then informed plaintiff's workers' compensation case manager, and plaintiff received full workers' compensation benefits while out of work.

On March 1, 2016, plaintiff filed suit with the EEOC, alleging sex discrimination, disability discrimination, retaliation for engaging in protected activity, and Equal Pay Act ("EPA") violations. On March 14, 2016, White also filed North Carolina Department of Labor ("NCDOL") Complaint No. 148-16, alleging a violation of the Retaliatory Employment Discrimination Act ("REDA").

On April 4, 2016, White provided a doctor's note increasing her lifting restriction to 7 pounds. Lanier asked Culp whether any accommodations or open positions were available. Culp again informed Lanier that all positions require lifting of at least ten pounds, and that defendant lacked sufficient personnel to provide White with regular lifting assistance. On April 6, 2016, Lanier told plaintiff that defendant could not accommodate her lifting restriction, and assured her that she would continue to receive full workers' compensation benefits.

Plaintiff amended her charge with the EEOC on April 18, 2016, now claiming additional acts of disability discrimination based on defendant's alleged failure to accommodate her disability and retaliation for filing with the EEOC and NCDOL.

Plaintiff's 7-pound lifting restriction continued until June 28, 2016, when plaintiff emailed Lanier a doctor's note releasing her to full duty. Lanier instructed plaintiff to report to work on July 5, 2016, at 6:00 A.M., after the Fourth of July holiday. Plaintiff then emailed Lanier a new doctor's note, dated June 30, 2016, stating that she was to remain out of work until her Functional Capacity Evaluation. Plaintiff admitted in her deposition that, after receiving Lanier's email, she asked the doctor for the new note stating she could not return to work.

Plaintiff was released to return to work, without restriction, on August 22, 2016. Plaintiff resumed her welding position in the wheeled engine department. In November 2016, plaintiff received a pay raise from $13.00/hour to $14.00/hour. From August 2016 until May 2017, plaintiff received no written discipline. On March 7, 2017, the EEOC issued its right-to-sue letter on plaintiff's prior filing. On May 23, 2017, the NCDOL also issued its right-to-sue letter.

In early May 2017, defendant received a bomb threat, causing all employees to be evacuated from the facility. During the evacuation, in the presence of other employees, plaintiff

asked Lanier: "Who you all done made mad now?" Lanier replied that she had nothing to do with it, and later said this exchange in such a serious situation made her very uncomfortable.

On May 16, 2017, Lanier received multiple complaints that plaintiff was creating a hostile work environment, with two employees complaining about plaintiff being verbally abusive. Lanier's investigation substantiated that plaintiff was creating a hostile work environment in the wheeled engine department, and that employees felt bullied and harassed by her. Lanier believed that she had allowed plaintiff to create a hostile work environment for too long. Based on plaintiff's disciplinary history, ongoing misconduct and erratic behavior, and her inappropriate conduct during the bomb threat, Lanier determined that defendant should terminate plaintiff. Lanier recommended plaintiff's termination to defendant's president, Kevin Bowers, and Bowers accepted Lanier's recommendation.

Lanier did not conduct plaintiff's termination due to concerns that plaintiff had become obsessed with her. Following plaintiff's workplace injury, Lanier, out of concern for plaintiff, provided plaintiff with her personal cell phone number. Plaintiff frequently called, sent text messages, and sent personal photographs to Lanier's cell phone. After plaintiff called Lanier's personal cell phone at approximately 10:00 P.M. one night, Lanier blocked plaintiff's number from her personal cell phone.

Plaintiff had also begun visiting Lanier's office, unannounced, on nearly a daily basis. Lanier, due to her discomfort, instituted a policy that all employees were required to schedule an appointment prior to visiting Lanier's office. Plaintiff perceived that defendant "took [Lanier] away from [her]." As a result, Lanier requested that Culp conduct plaintiff's termination. Culp,

due to plaintiff's propensity to be hostile and plaintiff's obsession with Lanier, requested that a police officer be present during the termination. Culp terminated White on May 16, 2017.

On May 17, 2017, plaintiff filed another charge with the EEOC claiming retaliatory discharge after defendant terminated plaintiff on May 16, 2017. On June 5, 2017, the EEOC issued a right-to-sue letter to plaintiff. On June 6, 2017, plaintiff filed a *pro se* Complaint in the Superior Court of Mecklenburg County, though plaintiff has since retained counsel. Defendant removed this matter to federal court on July 12, 2017, discovery closed on February 28, 2018, and defendant now moves for summary judgment on all of Plaintiff's claims.

**II.     Legal Standard**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it may affect the suit's outcome under governing law.  Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party.  That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324.   Instead, that party must present sufficient evidence from which "a reasonable jury

could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The Court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

### III. Discussion

In her Complaint (#1), plaintiff levied a wide array of claims against defendant based on the facts set out above. However, in her Memorandum in Opposition (#18) to the instant motion, plaintiff failed to respond to defendant's arguments to most of the claims, including her claim under the EPA, her Title VII sex discrimination claims, her disability discrimination claim, her negligent retention and supervision claim, her intentional and negligent infliction of emotional distress claims, and her civil conspiracy claim. In failing to do so, plaintiff has abandoned these claims and defendant is entitled to summary judgment on each of them. See Chamberlain v. Securian Fin. Grp., Inc., 180 F. Supp. 3d 381, 405 (W.D.N.C. 2016) (granting summary judgment on a claim deemed abandoned when plaintiff failed to respond to defendant's arguments in its motion); Talley v. City of Charlotte, 2016 WL 8679235, at *10 (W.D.N.C. 2016) (citing Mentch v. Eastern Savings Bank, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997)) (holding that a plaintiff "abandoned her harassment claim by failing to address that claim in her opposition to [defendant's] motion for summary judgment, or to offer clarification in response to

[defendant's] reply brief"); Grant-Fletcher v. McMullen & Drury, P.A., 964 F. Supp. 2d 514, 525 (D. Md. 2013) (holding that plaintiff abandoned a claim "by not opposing [defendant's] Motion for Summary Judgment on the issue").

As such, only four of plaintiff's claims remain for this court to review: plaintiff's claim for failure to accommodate under the ADA, plaintiff's retaliation claim premised on the failure to accommodate, plaintiff's REDA claim, and plaintiff's wrongful discharge in violation of public policy claim. The court will consider each claim in turn.

      a. *Plaintiff's claim for failure to accommodate under the ADA*

First, the court considers plaintiff's claim for failure to accommodate under the ADA, where plaintiff argues that defendant failure to accommodate her during the period where she was limited to 5- and 7-pound lifting restrictions. To succeed on such a claim, plaintiff must show that she was disabled within the meaning of the ADA, that defendant had notice of the disability, that with a reasonable accommodation she could perform her position's essential functions, and that defendant refused to make such accommodations. See Wilson v. Dollar General Corp., 717 F.3d 337, 345 (4th Cir. 2017) (citations and quotations omitted). Defendant does not argue that plaintiff was not disabled or that defendant lacked notice. Instead, defendant argues that no reasonable accommodation existed that defendant could have made. Plaintiff argues that defendant should have offered assistance in lifting or placed her in other positions that were available to be filled.

A "reasonable accommodation" means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability . . . to perform the essential

functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Reallocating or redistributing nonessential or marginal job functions is a reasonable accommodation; reallocating or redistributing essential functions is not. Id.; see also Shin v. Univ. of Maryland Med. Sys. Corp., 369 F. App'x 472, 482 (4th Cir. 2010); Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995). Essentially, the ADA requires a feasible or plausible accommodation, US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002); it does not require an employer to assign an employee to "permanent light duty." Crabill v. Charlotte Mecklenburg Board of Education, 423 F. App'x 314, 323 (4th Cir. 2011) (quoting Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987)); see also Lamb v. Qualex, 33 Fed. Appx. 49, 59 (4th Cir. 2002); Rehrs v. Iams Co., 486 F.3d 353, 357 (8th Cir. 2007) ("Under the ADA, an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated."). If multiple accommodations are possible, an employer "may reasonably accommodate an employee without providing the exact accommodation that the employee requested." Reyazuddin v. Montgomery Cty., Maryland, 789 F.3d 407, 415 (4th Cir. 2015); see also Hankins v. The Gap, Inc., 84 F.3d 797, 800 (6th Cir. 1996) (holding that the employer has "ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide"). Ultimately, to overcome a motion for summary judgment, plaintiff must "present evidence from which a jury may infer that the [proposed] accommodation is 'reasonable on its face, i.e., ordinarily or in the run of cases.'" Halpern v. Wake Forest University Health Sciences, 669 F.3d 454, 464 (4th Cir. 2012) (quoting Barnett, 535 U.S. at 401).

Here, plaintiff does not argue that the lifting requirement was not an essential function of the position. Instead, plaintiff's argument is that other employees could have provided lifting

assistance or placed plaintiff in another position, and also contends that defendant failed to properly engage plaintiff in a cooperative dialogue to help find an accommodation for plaintiff.

Plaintiff's first argument, that other employees could have provided lifting assistance, is untenable. A reasonable accommodation does not include forcing other employees to take on responsibility for essential functions. See Rudolph v. Buncombe Cty. Gov't, 846 F. Supp. 2d 461, 474 (W.D.N.C. 2012) (holding that the ADA "does not require an employer to make an accommodation that would impact other employees in their ability to perform their job duties, such as creating more work") (citations omitted); see also Rehrs, 486 F.3d at 357 (holding that "an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated"); Griffin v. Prince William Health Sys., 2011 U.S. Dist. LEXIS 45427, at *12-13 (E.D. Va. 2011) (holding that plaintiff's request to have colleagues "assist her in lifting anyone or anything greater than twenty-five pounds" was unreasonable).

Plaintiff's second argument, that she could have filled other positions, also fails. Plaintiff bears the burden of demonstrating the existence of "a vacant position for which she was qualified." Nartey-Nolan v. Siemens Med. Sols. USA, Inc., 91 F. Supp. 3d 770, 775 (E.D.N.C. 2015). Plaintiff argues that she could have filled cardboard transport, trash pickup, or custodial positions with her limitations. In her response (#18), plaintiff also argued she could have been placed in the $CO_2$ department again, just as she was when her finger was partially amputated.

But in her deposition, plaintiff admitted that she did not know if a custodial or cardboard transport position was even available at the time of her restrictions. Nor did she know if the cardboard transport or trash pickup positions involved other job duties or otherwise met her restrictions, meaning she has failed to meet her burden of showing that she was qualified for the

position. Plaintiff also asserted that defendant could have found something else for her to do, but defendant did investigate positions that would meet plaintiff's restrictions and found none available, and defendant is not obligated to "create a new job as an accommodation." Nartey-Nolan, 91 F. Supp. 3d at 775. Finally, while it is true plaintiff was placed in the $CO_2$ department when her finger was partially amputated in the fall of 2015, the limitation was on plaintiff's injured hand. Her right hand was unrestricted, and plaintiff was still capable of lifting ten pounds overall. As such, contrary to plaintiff's assertions, there is no conflict with plaintiff's placement in the $CO_2$ department at that time and the inability to place her there when she was incapable of lifting more than five or seven pounds. Furthermore, plaintiff has not offered any evidence that she could have performed duties in the $CO_2$ department with her restrictions, rendering any potential accommodation in the $CO_2$ department wholly speculative and insufficient to withstand summary judgment. See Basith v. Cook Cty., 241 F.3d 919, 930-32 (7th Cir. 2001) (affirming summary judgment for employer when plaintiff's "bare assertion that a wheelchair would accommodate his inability to perform delivery of medications is sheer speculation").

Finally, plaintiff argues that defendant neglected to properly cooperatively engage with plaintiff throughout the process, and that both parties are supposed to work together to find a reasonable accommodation. See Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996) (holding that "the responsibility for fashioning a reasonable accommodation is shared between the employee and employer"); Woods v. Boeing Co., 2013 U.S. Dist. LEXIS 133915, at *7-8 (D.S.C. 2013) (holding that both parties should "assist in the search for appropriate reasonable accommodation and to act in good faith" (citing Taylor v. Phoenixville School Dist., 184 F.3d 296, 311-12 (3d Cir. 1999)). However, the court declines to engage in any analysis of

how interactive or cooperative defendant was with plaintiff, as "an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." Wilson, 717 F.3d at 347. As plaintiff has failed to identify any possible reasonable accommodation, whether defendant was appropriately cooperative with plaintiff is irrelevant. Thus, the court finds that plaintiff has not proffered sufficient evidence to create an issue of material fact on her reasonable accommodation claim; as such, the court will grant summary judgment for defendant on this claim.

      b. *Plaintiff's claim for retaliation due to failure to accommodate*

Next, the court considers plaintiff's retaliation claim due to defendant's failure to accommodate her. Based on the complaint, plaintiff alleges retaliation claims under Title VII or the ADA; however, in plaintiff's response in opposition (#18) to defendant's motion for summary judgment, plaintiff mentions Title VII's standards as similar to the ADA's but only makes arguments that rebut defendant on a retaliation claim under the ADA. Again, plaintiff's retaliation claim under Title VII has been abandoned and summary judgment is appropriate for defendant. Chamberlain, 180 F. Supp. 3d at 405; Talley, 2016 WL 8679235 at *10 (citation omitted); Grant-Fletcher, 964 F. Supp. 2d at 525.

As for a retaliation claim under the ADA, plaintiff must show protected conduct, an adverse employment action, and a causal link between the protected conduct and adverse action. Reynolds v. American Nat. Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) (citation omitted). Plaintiff relies solely on defendant's alleged failure to accommodate her as an adverse employment action, arguing that defendant failed to accommodate her after she filed her first EEOC charge. As outlined above, the court has already found that plaintiff's failure to

accommodate claim fails as a matter of law, as there was no reasonable accommodation available and plaintiff was provided with workers' compensation benefits for the duration of her time away from work due to injury. Furthermore, other colleagues of this court have found that retaliation claims are improper when they rely on an alleged failure to accommodate as an adverse employment action, as they leave plaintiffs "able to 'double dip' by asserting both ADA failure-to-accommodate and retaliation claims." McLain v. Texas Corp., 2018 U.S. Dist. LEXIS 6691, at *18-20 (S.D. Ala. 2018); see also Moore-Fotso v. Bd. of Educ. of Chicago, 211 F. Supp. 3d 1012, 1037-38 (N.D. Ill. 2016) (holding that an alleged failure to accommodate "cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim"). Accordingly, without an adverse employment action to rest on, plaintiff's retaliation claim under the ADA fails.

      c. *Plaintiff's REDA claim*

Next, the court will consider plaintiff's claim under REDA. The first issue is whether plaintiff actually exhausted her administrative remedies before filing suit. Defendant argues that plaintiff failed to file an NCDOL charge alleging retaliation based on the April 2017 workers' compensation claim, while plaintiff contends that they appropriately updated their NCDOL charge based on a related matter.

N.C. Gen Stat. § 95-243(b) allows a plaintiff to pursue a civil action only if she has been issued a right-to-sue letter by the NCDOL. The Fourth Circuit Court of Appeals has not specifically addressed the purpose of filing NCDOL charges, but it has stated that an analogous EEOC charge "notifies the charged party of the asserted violation" and brings the party before the EEOC to secure "voluntary compliance with the law." Balas v. Huntington Ingalls Indus.,

711 F.3d 401, 406-07 (4th Cir. 2013). If related charges arise later, a new charge does not necessarily need to be filed with NCDOL, as administrative remedies have been exhausted "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005); see also Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) ("All other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court . . . and we adopt this position.").

Here, the court finds that plaintiff failed to sufficiently exhaust her administrative remedies. Plaintiff's first NCDOL charge was filed in March of 2016, and while the alleged workers' compensation and termination claims did not arise until April and May of 2017, NCDOL did not issue a right-to-sue letter on any charges until May 23, 2017. Plaintiff has argues that NCDOL was apprised of new developments, including the workers' compensation and termination claims, before issuing its right-to-sue letter. However, the April workers' compensation claim and May termination claim appear to be based on entirely different sets of facts and occurrences than the alleged misconduct that formed the basis of the initial NCDOL charge. Indeed, even the alleged retaliation by termination is not related to plaintiff's first NCDOL charge from over a year previously, but instead on the April 2017 workers' compensation claim. This set of facts stands in sharp contrast to the plaintiff in Nealon who alleged retaliation based on his initial filing with the EEOC. Nealon, 958 F.2d at 590. Further, plaintiff notified NCDOL of her new claims via private letter, and defendant received no notice of the letter or its contents, including the alleged REDA violation, until this litigation commenced. In a similar context involving an EEOC charge, the Fourth Circuit held that "it

would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." Balas, 711 F.3d at 408. As such, the court cannot find that plaintiff exhausted her administrative remedies under REDA.

Furthermore, even if plaintiff's REDA claim was sufficiently similar to consider her administrative remedies exhausted, plaintiff's own testimony demonstrates that her termination was not in retaliation for her NCDOL filings. Plaintiff explicitly stated that she believes defendant terminated her because she knew improper things about other employees, and not because of any causal connection to her NCDOL charges. Finally, defendant filed appropriate workers' compensation paperwork for plaintiff, plaintiff received workers' compensation benefits, and she returned to work afterwards, all of which clearly contradict any alleged retaliatory motive on the part of defendant. And even if plaintiff scraped together a *prima facie* case of retaliation, defendant has demonstrated that they "would have taken the same unfavorable action" absent plaintiff's claims. N.C. Gen. Stat. § 95-241(b). Defendant has repeatedly shown that plaintiff's termination was a result of her misconduct during the bomb threat, a history of hostile interactions with coworkers, and extensive and inappropriate interactions with her superior; plaintiff has offered little outside of speculation to undermine the validity of defendant's reasoning, and the mere fact that defendant discharged plaintiff "with knowledge of her injuries and her workers' compensation claims does not establish a material issue of fact." Watkins v. Martin Mills, Inc., 1996 U.S. Dist. LEXIS 19863, at *15-16 (M.D.N.C. 1996). As such, the court will grant summary judgment to defendant on plaintiff's REDA claim.

### d. *Plaintiff's wrongful discharge in violation of public policy claim*

Finally, the court considers plaintiff's claim that she was wrongfully discharged in violation of public policy. As plaintiff was employed at-will, she bears the burden of demonstrating that her discharge occurred for a reason that violates public policy. Imes v. City of Asheville, 163 N.C. App. 668, 670 (2004). Specifically, plaintiff argues that her termination violated the public policies laid out in the North Carolina Wage and Hour Act ("NCWHA"), REDA, the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), the North Carolina Equal Employment Practices Act ("NCEEPA"), and an OSHA complaint.

After review of the record, the court notes that plaintiff's response (#18) does not offer any argument to rebut defendant except on REDA. As such, plaintiff has abandoned her NCWHA, NCPDPA, NCEEPA, and OSHA claims, so defendant is entitled to summary judgment on them. Chamberlain, 180 F. Supp. 3d at 405; Talley, 2016 WL 8679235 at *10 (citation omitted); Grant-Fletcher, 964 F. Supp. 2d at 525. As for plaintiff's REDA claim, plaintiff may pursue "a common law claim for wrongful discharge based on a violation of REDA." White v. Cochran, 216 N.C. App. 125, 133 (2011); Whitings v. Wolfson Casing Corp., 173 N.C. App. 218, 221 (2005). However, as this court has already ruled that plaintiff's REDA claim could not survive summary judgment, "her wrongful discharge claim based on a violation of REDA also fails." Watkins, 1996 U.S. Dist. LEXIS 19863, at *17. Therefore, the court will grant defendant summary judgment on this basis.

### ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#14) is **GRANTED** and this matter is **DISMISSED**.

Signed: May 21, 2018

Max O. Cogburn Jr.
United States District Judge